THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM CANNON, Defendant-Appellant.

First District (4th Division)   No. 1—86—2485

Opinion filed June 11, 1992.—Rehearing denied April 26, 1993.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Charles Bell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, William Cannon, was found guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), and acquitted of the home invasion charge (Ill. Rev. Stat. 1985, ch. 38, par. 12—11). Defendant's *pro se* motion for a new trial was denied. A motion for a new trial filed by defendant's attorney was also denied. The trial court granted codefendant's severance motion. At sentencing, the State recommended an extended-term sentence of 60 years, noting that defendant had previously been convicted of a double murder in 1968 and sentenced to death. His sentence was reduced by the Illinois Supreme Court and he was released on parole in 1980. The trial court sentenced defendant to an extended term of over 50 years in the Illinois Department of Corrections.

On appeal, defendant contends that the trial court erred (1) in denying him his sixth amendment right to confrontation by not allowing him to raise Marquette Fisher's probationary status for cocaine possession; (2) in denying him his sixth amendment right to present a defense by denying his request to amend his discovery answer; (3) by refusing to instruct the jury on the lesser-included offense of robbery;

and (4) by allowing improper prosecutorial comments in the closing argument.

We affirm.

On the morning of October 7, 1985, Patrick Parker was in his apartment with his girl friend, Kuanda Smith, and their three-month old baby, his brother, Marquette Fisher, and his uncle, Raymond Burnett. Between 9:30 and 10 a.m., Parker opened the door for his friend, Bucky Smith. Bucky stayed for a short time; when Parker opened the door to let him leave, defendant was standing at the door with a black .38 caliber revolver. He walked into the apartment, fired once at Parker and announced, "It's a stickup."

Parker was not hit and attempted to escape but was stopped in the hall by codefendant Troy Smith, Bucky Smith's brother. Defendant and Troy wanted money and were told by Parker that it was in the back bedroom. Parker was led there at gunpoint. Defendant recovered $370 in cash stored under the mattress.

When they returned to the living room, Troy asked Bucky if he had a weapon. Bucky handed him a rifle owned by Parker's roommate. Defendant brought Fisher into the living room, where Troy put a gun to Fisher's head and demanded more money. Fisher directed him to the mattress in the front bedroom where $400 was hidden. When Fisher later checked the mattress, the $400 was gone.

Everyone in the apartment testified that defendant and Troy wanted still more money. Parker said he had more money downstairs. At gunpoint, Parker was taken to the apartment of Fannie Smith, Kuanda Smith's mother. Defendant and Parker had walked through the apartment to the back porch when Parker's dogs began to bark. Defendant threatened to kill them so Parker tied the dogs to a fence about 100 feet away. While doing so, he saw his other brother, Gregory Parker, looking down from the third-floor window. Parker made a hand gesture to signal to his brother that he was being robbed. Then he began to go back upstairs with defendant. When they reached Parker's third-floor apartment, defendant was the first to enter. Parker was able to slam the door, leaving defendant inside the apartment. Parker then ran downstairs, spoke with Gregory, and called the police.

Back in Parker's apartment, defendant demanded that Fisher remove his chains from his neck. Defendant then snatched the chains off his neck. In the meantime, Troy returned from the back room with a quilt that he used to wrap the rifle. Defendant and Troy threatened to return if anyone said anything. They left the apartment quickly and then returned and left again. They tried to reenter a third time, but

Fisher and Burnett were holding a loveseat against the door. When shots were fired, Fisher and Burnett fled out the back door into the yard, where they jumped over the gate into the alley. Kuanda remained in the apartment in the closet. When she came out, defendant was in the bedroom and told her that he had to find a way out of the apartment.

Defendant's attempt to leave by the back door was thwarted by police officer Donald Mitchell, who was standing at the bottom of the stairs. Officer Mitchell announced, "[P]olice, come out where I could [*sic*] see all of you." Defendant came out after about 30 seconds and was identified by Fisher as the person who had just robbed him. The items inventoried from defendant's clothing were $370 cash, two chains, and a watch. Parker identified the watch as being part of his jewelry collection but had no memory of any personal marks of identification that may have been on it. Parker did not tell the police about the $400 taken by defendant from under the mattress until the day after the incident.

At trial, Troy Smith testified in his own defense. The witness stated that Parker propositioned him to "do something" to his brother Bucky because he owed them $800 for cocaine. He arranged to meet with Bucky at Parker's apartment. The day of the meeting, Troy ran into defendant, who also had experienced some problems dealing cocaine with Parker. According to Troy, they went to Parker's apartment together. When they arrived at the building, Troy made a stop before heading to the apartment. He testified that upon his arrival, he found defendant and Parker arguing about a drug deal. He did not see defendant with a gun. Fisher, Burnett and Bucky were also present.

Defendant and Parker left the room. Troy remained in the apartment with Fisher and Bucky. Troy testified that he took the gun from Bucky and collected all the other guns in the house, and wrapped them in a blanket. He testified that he collected the guns as a means of self-defense and was going to leave the blanket in the hallway near the entrance to the building. Just as he neared the entrance, a police officer approached and told him to "drop it."

After Troy's testimony, counsel for defendant stated that he had no knowledge of the State's claim that the watch was taken during the armed robbery. Counsel stated that there was no mention of the watch in the complaint, the information, or at the preliminary hearing. Counsel asked the court to allow defendant's father or brother to testify as to ownership of the watch. These requests to reopen the defense's case were denied. The trial court found that the watch was

mentioned in the arrest report as having been recovered from defendant.

Officer Clausell Ray and Assistant State's Attorney Peter Vilkelis testified in rebuttal to the testimony of Troy. The officer testified that Troy was standing outside of the doorway to the apartment when he was told to "drop it." The assistant State's Attorney testified that during the interview Troy said nothing about the incident being drug related. He further testified that Troy never stated that the guns in his possession at the time of the arrest were not owned by him.

The first issue on appeal is whether the trial court erred in denying defendant his sixth amendment right to confrontation by not allowing him to raise the probationary status of State's witness Marquette Fisher. Fisher was on probation for cocaine possession. (See Ill. Rev. Stat. 1985, ch. 56½, par. 1410.) The relevant portion of section 410 provides:

> "(a) Whenever any person who has not previously been convicted of, or placed on probation or court supervision for any offense under this Act or any law of the United States or of any State relating to cannabis or controlled substances, pleads guilty to or is found guilty of possession of a controlled or counterfeit substance under Section 402(b), the court, without entering a judgment and with the consent of such person, may sentence him to probation.
>
> * * *
>
> (e) Upon fulfillment of the terms and conditions of probation, the court shall discharge the person and dismiss the proceedings against him." (Ill. Rev. Stat. 1985, ch. 56½, par. 1410.)

This panel has stated that successful completion of probation like that in the instant case, does not result in a conviction nor is it the basis for impeachment. *People v. Johnson* (1987), 154 Ill. App. 3d 301, 307.

At the time of trial, Fisher had not completed his probation sentence. The prosecution moved to preclude the defense from treating the probation as a judgment of conviction for impeachment purposes. Our review of the record indicates that the trial court was aware that defense counsel wanted to cross-examine on this issue to determine any bias, interest or motive in Fisher's testimony. By then granting this motion, the trial court effectively sent a message to defense counsel that he would not be permitted to engage in this type of cross-examination. The right to cross-examine is not subject to the discretion of the trial court. (*Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218.) However, given the nature of the evi-

dence in this case, we find that the error, if any, of the trial court is not grounds for reversal.

The inquiry to determine whether a constitutional error warrants a reversal is whether the error was harmless beyond a reasonable doubt. The United States Supreme Court measures this error using three approaches: (1) whether it might have contributed to the conviction; (2) whether other evidence is overwhelming in support of the conviction; or (3) whether the evidence is cumulative or merely duplicates properly admitted evidence. *People v. Wilkerson* (1981), 87 Ill. 2d 151, citing *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

■■ Upon review of the record, we find that despite the trial court's restriction of cross-examination, there is overwhelming evidence in this case that supports the conviction. The State cited *People v. Glover* (1988), 173 Ill. App. 3d 678, as analogous to the case at issue. The similarities between the two cases are significant. The defendants in both cases were found guilty of armed robbery. Both had eyewitnesses to the crime. Finally, the defendants in each case argued that the court's restriction of their cross-examination was improper and constituted reversible error.

In *Glover*, the relevant portion of the court's response to defendant's argument went as follows:

"Even if the court's restriction of [the witness'] cross-examination was improper, we find that the error was not prejudicial. The evidence against the defendants was overwhelming, as there were seven eyewitnesses to the robberies whose accounts of the incident substantially agreed in all essential respects. [The witness'] testimony was not crucial for the conviction of any of the defendants." *People v. Glover* (1988), 173 Ill. App. 3d 678, 682-83.

Our response in the case at bar is similar. Here, we had three eyewitnesses. Patrick Parker and Kuanda Smith were in the apartment when defendant entered the apartment in order to execute a "stickup." Even without the testimony of the third eyewitness, Marquette Fisher, we have the testimony of the police. Officers Ray and Mitchell apprehended defendant and Troy as they were exiting the building. Further, they had items belonging to the victims in their possession at that time. Thus, there was enough evidence to support a conviction without the testimony of Marquette Fisher.

The second issue on appeal is whether defendant was denied his sixth amendment right to present a defense by the denial of his re-

quest to amend his discovery answer. The sixth amendment compulsory process clause provides the following:

"In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." (*Taylor v. Illinois* (1988), 484 U.S. 400, 402 n.1, 98 L. Ed. 2d 798, 806 n.1, 108 S. Ct. 646, 649 n.1.)

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." (*Taylor*, 484 U.S. at 408, 98 L. Ed. 2d at 810, 108 S. Ct. at 652.) Yet, it does not negate the ability of the trial court to impose harsh sanctions for failure to comply with the rules of discovery.

Supreme Court Rule 415(g) expressly provides:

"(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.

(ii) Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court." 87 Ill. 2d R. 415(g).

Defendant argues that the trial court's decision to exclude the testimony of his father was too severe and therefore amounted to the denial of his right to present a defense. Yet, the explanation that follows the rules leaves the imposition of sanctions to the trial court. The committee comments to the rule (87 Ill. 2d R. 415(g), Committee Comments) state:

"Rather than attempt to provide specific sanctions for specific violations, the Committee deemed it wise to leave the sanctions to the discretion of the trial court. \*\*\* If justified under the circumstances, the court may exclude evidence which a party has failed to disclose under applicable discovery rules."

■ After the State rested, defendant sought to amend his list of witnesses to include his father. He requested the court to permit his father's testimony as to ownership of the gold watch recovered from defendant at the time of his arrest. Defendant argues that he met his duty to disclose as soon as the intent to call his father as a witness was formed. The colloquy between defense counsel and the court went as follows:

"MR. KLOAK [DEFENSE COUNSEL]: The Defendant's position is that he received that watch from his father and that it

is his watch and not the watch of the complaining witness. His father is not available in court today, he has not been listed as a witness on the answer to discovery, and the reason for that is we didn't know the watch was going to be claimed as a proceed of the armed robbery.

THE COURT: That is patently false.

MR. KLOAK: It does say on the arrest report that it was recovered from the Defendant.

THE COURT: It says recovered from the arrestees, $330 and two gold colored chains, watch, top shirt pocket, and it says right on the inventory October 7th, '85, two gold chains, one thin, one thick, so please, your client was surrendered on that date and your client and you were on full notice of it, it was in the court file all this time and I just pulled it out right now."

Further, the prosecutor mentioned that it was the first item listed on the answer to discovery. Given this information, the court was within its discretion in deciding to exclude defendant's father's testimony as well as the testimony of defendant's brother.

Defendant focuses on the importance of the excluded testimony because of its ability to cast doubt on the credibility of Parker. The record indicates that the defense counsel was on notice that the watch might become an issue. By following the rules of discovery, defense counsel could have ensured that all testimony as to its ownership would have been heard by the jury. We find that the trial court did not abuse its discretion in excluding the testimony of defendant's father.

Next, defendant contends that the trial court erred by refusing to instruct the jury on the lesser-included offense of robbery. He argues that Troy's testimony, that he was unarmed and that he did not see defendant holding a gun, creates a question of fact as to whether an armed or unarmed robbery occurred.

■■ A recent case referred to the Illinois Supreme Court on this issue. The relevant portion is as follows:

"[O]ur supreme court has stated that 'an included-offense instruction is required only in cases where the jury could *rationally* find the defendant guilty of the lesser offense and not guilty of the greater offense.' " (Emphasis added.) (*People v. Austin* (1991), 216 Ill. App. 3d 913, 917, quoting *People v. Perez* (1985), 108 Ill. 2d 70, 81.)

Patrick Parker, Kuanda Smith, and Marquette Fisher were all eye witnesses to the incident. All three of them testified that defendant

was armed. When Troy was apprehended by the police, he was carrying a blanket containing several weapons. This panel has stated that, "where none of the evidence can be interpreted to indicate an unarmed robbery, such an instruction is properly refused." *People v. Malaszenko* (1979), 76 Ill. App. 3d 1, 7.

There was further testimony by an officer that defendant had an opportunity to dispose of his weapon before surrendering to police. Officer Mitchell testified that he announced himself to defendant by saying, "[P]olice, come out where I could [*sic*] see all of you." He kept calling to defendant, who was on the third floor on the back porch of the building. Yet, it took defendant approximately 30 seconds before he came within full view of the officer. It is possible that defendant could have disposed of the gun during this time frame.

Finally, Troy's testimony does not definitively state that defendant was unarmed. Troy said only that he was not able to see a gun. Three eyewitnesses testified as to the existence of a gun. They testified that both defendant and Troy were armed during the incident. This court is aware "that it is reversible error to instruct the jury on a lesser included offense, and thus permit the jury to reach a compromise verdict, when there is no evidentiary basis for the instruction." (*People v. Knieling* (1982), 111 Ill. App. 3d 102, 109.) We therefore affirm the trial court's decision not to tender to the jury a plain robbery instruction.

The final issue on appeal is that the trial court erred by allowing improper prosecutorial comments in the closing argument. The rebuttal remarks at issue are as follows:

> "MS. WOLOSHIN [PROSECUTOR]: Let's look at what the Defendants say. The only thing we hear in Mr. Cannon's defense was his attorney told you in opening statements that no witnesses, no exhibits—
>
> MR. KLOAK [DEFENSE COUNSEL]: Objection, Judge. Troy Smith.
>
> MS. WOLOSHIN: The story from a man who wasn't there, and what did he tell you in opening statement, the Defendant Cannon got money from some teachers to go buy cocaine on the Friday before. *** However, the cocaine he got was weak so he returned for a refund or a replacement ***. His story is uncorroborated, there are no witnesses, there is no evidence of it, it is false, it is a fabrication, it is a lie."

Defendant argues that the assistant State's Attorney's comments focused the jury's attention on the fact that he did not testify. Our supreme court holds the following:

"The appropriate test for determining whether a defendant's right to remain silent has been violated is whether 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify.' [Citations.]" *People v. Dixon* (1982), 91 Ill. 2d 346, 350.

See also *People v. Gonzalez* (1991), 212 Ill. App. 3d 839, 843.

■ Here, defense counsel's opening statement says the reason for defendant and Troy being at the residence of Parker involved a cocaine transaction. He alleged that defendant had purchased some cocaine from Parker. It was not of the strength defendant expected. On Monday, October 7, 1985, defendant was returning to Parker's apartment to resolve the issue when he met Troy. They went to the apartment complex together. Defense counsel stated that the evidence would show what was promised in his opening statement. The prosecutor's response focused on the fact that there was no evidentiary basis to support some of the allegations in defense counsel's opening statement. "[F]ailure to produce evidence on a material matter injected into the case by the defense gives rise to the right of comment by the prosecution." (*People v. Durso* (1968), 40 Ill. 2d 242, 253.) During the trial, nothing was presented as evidence that Patrick Parker either sold or used cocaine.

Defendant's argument that there could be no reasonable expectation of testimony about a drug sale does not negate the right of the prosecutor to emphasize the strength of the State's evidence. "It has been held that the State may properly argue that the testimony of its witnesses is uncontradicted even where the defendant is the only person who could have contradicted it." (*People v. Perry* (1989), 183 Ill. App. 3d 534, 542.) Here, the prosecutor's comments were a proper response to defense counsel's unfulfilled promises of evidence. These comments did not constitute reversible error. See *People v. Dixon* (1982), 91 Ill. 2d 346.

For the foregoing reasons, we affirm defendant's conviction and sentence for armed robbery.

Affirmed.

LINN and McMORROW, JJ., concur.