THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME MURRAY, Defendant-Appellant.

First District (4th Division)   No. 1—87—3035

Opinion filed July 19, 1990.—Rehearing denied September 4, 1990.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Kimberly A. Mozdzierz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Jerome Murray was convicted of murder and sentenced to 30 years' imprisonment. On appeal, defendant argues that: (1) his right to a fair trial was violated when the trial court improperly excluded testimony exculpating him and inculpating another person; and (2) the trial court improperly considered the fact that a death occurred as an aggravating factor in sentencing him to a 30-year prison term.

We affirm.

BACKGROUND

Evidence presented at trial disclosed that on February 6, 1987, at approximately 9:15 p.m., a group of young people including Andrew McKinney, David Frazier, Schvaya McCray, Charles Wilson and several of their friends were walking north along Wentworth Avenue when a red Chevrolet Monte Carlo approached from the north. Mc-Kinney noted that the front seat passenger, whom he recognized and identified as the defendant, Jerome Murray, or "Head," was leaning out of the car window with a gun in his hand. McKinney heard defendant exclaim, "GDK," an abbreviation for "Gangster Disciple Killer" just before defendant fired a shot from his gun. Defendant then yelled, "4VL," an abbreviation for "Four Vice Lords" before he fired again.

The second shot hit Andrew McCoy. The other youths carried Mc-Coy to a nearby alley away from the scene of the shooting.

The police and paramedics were called and arrived several minutes later. At that time, McKinley informed the police that the defendant shot McCoy and that he knew where to find him. McKinney rode with police officers to several locations in an unsuccessful attempt to locate Murray. Later that night, defendant was apprehended. McKinney identified him as McCoy's assailant.

McCray testified that two days after the shooting, Harvey Jones

(Dirty Harvey) offered to give him three shotguns and two handguns if he told the police that Norvel Sparkman shot McCoy.

Chicago police detectives Solecki and Baker testified that after the shooting, McKinney, Wilson and several other youths identified photos of the defendant as the offender.

Defendant denied shooting McCoy. He testified that on the night of the shooting, he and some friends played basketball at a school playground, went to a friend's house, went to a neighborhood "mini mart" and later walked around the neighborhood, where he met and spoke with more friends. Defendant asserted further that he and several of his friends then went to a White Castle for hamburgers. From 10:30 to 11:30 p.m, defendant and his friends attended a party at a local Catholic school. Defendant then spoke with a friend for about an hour, after which the friend drove him home. Defendant denied that he had been in a red Chevrolet Monte Carlo or a brown Ford Maverick earlier that night.

After defendant arrived home, he spoke for a short time with his mother and his stepfather, a Chicago police officer, who told him that he should go to the police station. There, police detectives interviewed him for several hours, and then took him to the lockup. Later, one of the officers performed a gunshot residue test on him.

Defendant further testified that he had been close friends with McCoy. He explained that he had been to McCoy's house at least 10 times and that he used to play softball with him.

Lucius Campbell testified that on the evening of February 6, 1987, at approximately 9 p.m., he saw "Speedy D," Anthony Murray (defendant's brother), and Norvell Sparkman riding in a brown Ford Maverick. Campbell stated that one of the youths threw a golf club from the car which hit him in the right eye. Campbell later heard two gunshots, but he did not hear gunshots coming from, or see guns pointed out of, the Maverick. Instead, he testified that just before he heard the gunshots, he saw a maroon or red car being driven down one of the adjacent streets.

Tony Fleming testified that on the evening in question, at approximately 9 p.m, he, Joe Howard, and the defendant stopped to talk with Melanie and Alisa Long at 107th and Cottage Grove. The youths then went to a party several blocks away, then to a White Castle, and then to another party. Fleming and Howard then took a bus home; the defendant told them that he was also going home. Fleming stated that at no time during the evening did they ride about in either a Monte Carlo or a Maverick.

Howard testified that during the evening of February 6, 1987, he,

Anthony Murray, and defendant attended a party at a neighborhood Catholic school. Howard denied that the group was in an auto at any time that night, and denied being in the vicinity of 117th and Wentworth. At approximately 11 p.m., Howard and Anthony Murray left the defendant and took a bus home.

Kenna Starks testified that on February 6, 1987, at approximately 10:20 p.m. Norvell Sparkman arrived at the party she was attending. While she and Harvey Jones were dancing with one another, they overheard a conversation between Sparkman and "Mike."[1] The State, on hearsay grounds, objected to this line of questioning. The trial court sustained the State's objection.

Alisa and Melanie Long testified that on February 6, 1987, at approximately 8:30 p.m., they spoke to the defendant and his friends at the corner of 107th and Cottage Grove. Although another car approached the group, the sisters indicated that the defendant did not enter the other car.

Harvey Jones, Lee McCullum, and Darryl Washington testified that on February 8, 1987, they were in Washington's car discussing McCoy's death with McCray. During this conversation, McCray asked Jones to give him some guns. In return, McCray indicated that he would testify on Murray's behalf.

Dawana Cohns testified that on February 6, 1987, at approximately 9:30 p.m., Anthony Murray, Sparkman, and "Speedy D" came to her house. Defense counsel attempted to elicit testimony as to why the youths went to Cohns' house.[2] The State objected, and, after a sidebar, the trial court sustained the State's objection.

OPINION

■ On appeal, defendant first argues that the trial court improperly excluded testimony exculpating him and inculpating Norvell Sparkman for the murder of Andrew McCoy. We disagree. The admis-

---

[1]Kenna Starks was prepared to testify that she heard Sparkman tell "Mike" that he "had just got through gunning some folks," and that he subsequently explained that he meant McCoy. Starks and Jones then stopped dancing, walked over to where Sparkman stood, and listened to the rest of the conversation. The trial court declined to admit Sparkman's statement as a declaration against penal interest.

[2]Cohns was prepared to testify that the three youths asked her to hide a gun with which they had just shot a person on 117th and Wentworth. Cohns refused to take the gun. Four days later, she allegedly informed the defendant's stepfather, a Chicago police officer, about the youths' visit. Cohns also related the story to the violent crimes police officer in charge of this investigation. The trial court agreed that the statement which Cohns gave the police could be available for the record, but the court declined to admit the statement into evidence.

sion of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing that the court has abused its discretion. *People v. Bowel* (1986), 111 Ill. 2d 58, 68, 488 N.E.2d 995, 1000.

■■ Generally, if a person declares, outside of the courtroom and not under oath, that he, and not the defendant on trial, committed the crime, this statement is inadmissible as hearsay though the declaration is against the declarant's penal interest. (*People v. Bowel*, 111 Ill. 2d at 66, 488 N.E.2d at 752; *People v. Tate* (1981), 87 Ill. 2d 134, 143, 429 N.E.2d 470, 475.) However, a declaration against penal interest may be admitted where justice requires. *People v. Bowel*, 111 Ill. 2d at 66, 488 N.E.2d at 752.

■■ In *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the Supreme Court articulated the criteria to be analyzed in determining whether a declaration against penal interest is admissible. The *Chambers* Court noted that four factors should be considered in determining whether the hearsay statements were made under circumstances that provided an assurance of reliability: (1) the declarant confessed spontaneously to a close acquaintance shortly after the crime occurred; (2) other evidence corroborated the confession; (3) the confession was self-incriminating and unquestionably against the declarant's interest; and (4) if there was any question about the truthfulness of the extrajudicial statements, the declarant was present in the courtroom, was under oath, could be cross-examined by the State, and the trier of fact could weigh his demeanor and responses.

■■ In applying the *Chambers* factors to the instant factual scenario, we conclude that the trial court properly excluded this hearsay testimony. Starks and Jones were prepared to testify that they overheard Sparkman tell "Mike" that "he had just got through gunning some folks," *i.e.* McCoy. However, the record does not reveal that Starks and Jones were Sparkman's close acquaintances. To the contrary, Sparks and Jones were not even parties to the conversation— they apparently overheard these remarks at a party while dancing several feet away from Sparkman. "Mike" did not appear at trial to testify about Sparkman's inculpatory statement. Neither Sparks nor Jones testified as to the balance of the conversation they overheard.

Although Sparkman's statement was self-incriminating and was unquestionably against his interest, this statement was not corroborated by other more reliable evidence. As the trial court noted, Starks did not directly inform the police about Sparkman's remarks. Starks waited several days and then chose to inform the defendant's stepfa-

ther, a Chicago police officer, instead of informing someone presumably less interested in the outcome of the investigation.

Finally, we note that it was the defendant's duty to call Sparkman to testify at trial. However, the record does not indicate that the defendant asked the trial court to issue a subpoena in order to compel Sparkman's presence at trial. Thus, as was the case in *Bowel*, the State did not have an opportunity to cross-examine the declarant, and the trial court was unable to weigh the declarant's demeanor and responses. Based on the foregoing, we therefore conclude that the trial court did not abuse its discretion in excluding this hearsay testimony because the declaration was not "made *** under circumstances that provide considerable assurance of [its] reliability." See *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.

We next address the issue of whether the trial court properly ruled that Dawana Cohns' testimony was inadmissible. Cohns was prepared to testify that on February 6, 1987, at approximately 9:30 p.m., Anthony Murray, "Speedy D," and Sparkman asked her to hide a gun with which they had just shot a person at 117th and Wentworth. Cohns refused to take the gun. It was not until four days later that she reported the incident to the police.

■ After reviewing the record, we conclude that the trial court properly excluded Cohns' testimony about her conversation with Anthony Murray, "Speedy D," and Sparkman. The record does not disclose whether the youths were Cohns' close acquaintances; at trial, Cohns merely stated that she knew them. Further, the record does not corroborate whether the youths actually had a gun that night, or, assuming that they did, whether the gun was theirs, whether the gun was actually the murder weapon and, most importantly, why they trusted Cohns enough to request that she dispose of the weapon for them. While the declaration was generally self-incriminating and against the declarants' interest, it is significant to note that neither Murray, "Speedy D," nor Sparkman specifically confessed to the shooting. Finally, Cohns did not report the statement to the police until four days later, and as we noted, when she finally did so, she told the defendant's stepfather, a Chicago police officer, who told her to speak to the investigating officer. Based on the record before us, we agree that the trial court correctly determined that Cohns' testimony was untrustworthy.

■ Defendant also argues that the trial court improperly considered the fact that a death occurred as an aggravating factor in sentencing. In response, the State maintains that the defendant waived

this argument because he did not raise it at the sentencing hearing and did not include the alleged error in his post-trial motion. We agree with the State's position on this issue. Our review of the record reveals that the defendant's attorney did not object at the sentencing hearing, and did not raise this issue in either his original or amended motion for a new trial. Because the defendant did not present this issue below, we therefore deem it waived. *People v. Compton* (1990), 193 Ill. App. 3d 896, 550 N.E.2d 640; *People v. Diaz* (1989), 189 Ill. App. 3d 473, 545 N.E.2d 399.

Even assuming for the sake of argument that the defendant did not waive this argument, we note that the trial court has considerable discretion in imposing a sentence (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344), and, where the sentence imposed is within the statutory limits, a reviewing court will not exercise its power to reduce the sentence absent a finding that the trial court abused its discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) Also, the trial court is in a superior position during the trial and the hearing in aggravation and mitigation to determine the punishment to be imposed than are courts of review. *People v. Cabrera*, 116 Ill. 2d at 494, 508 N.E.2d at 405.

In the case at bar, the trial court properly noted that McCoy's murder was gang related and that the victim and his friends did not provoke the attack. After considering the nature and circumstances of the crime, we cannot say that the trial court abused its discretion in sentencing the defendant to 30 years' imprisonment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McMORROW, P.J., and JIGANTI, J., concur.