THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRANCE MACK, Defendant-Appellant.

First District (3rd Division)   No. 1—89—2982

Opinion filed October 28, 1992.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Michael Falagario, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant was found guilty of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), armed violence (Ill. Rev.

Stat. 1987, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). Defendant was sentenced to concurrent terms of 60 years' imprisonment for first degree murder, 30 years' imprisonment for attempted murder, and 30 years' imprisonment for armed violence.

The following issues are before this court for review: (1) whether the trial court violated defendant's right to due process and a fair trial when it refused to allow him to introduce a statement made by his codefendant; (2) whether the trial court encroached upon defendant's constitutional right to present his case by trying defendant and his codefendant simultaneously in separate trials; (3) whether the trial court violated defendant's constitutional right to present his defense by refusing to allow him to present testimony that a gunshot residue test was requested but never conducted; and (4) whether the trial court abused its discretion when it sentenced defendant to 60 years' imprisonment for first degree murder and 30 years' imprisonment for attempted first degree murder. We affirm.

Defendant and Adrian Hennon were indicted for the offenses of first degree murder, attempted first degree murder, armed violence and aggravated battery. Prior to trial, defendant filed a motion to suppress identification testimony, and Hennon moved to sever his trial from defendant's. The trial court denied defendant's motion to suppress, but granted Hennon's motion to sever and ordered that defendant and Hennon be tried simultaneously by separate juries. The trial court mandated that defendant's or Hennon's jury would be excused whenever evidence concerning the other defendant whose culpability the jury was not charged to determine would be elicited during cross-examination of the State's witnesses.

The State maintained that the facts of the case occurred in the following manner. On September 9, 1988, a group of boys and young men were standing in the park located at 87th and South Jeffrey Avenue, across the street from the Chicago Vocational High School. Present in this group were Esau Asad, Darren Harris, Devon Miller, Jason Murray, Elward Verrett and the decedent, 11-year-old Abdulah Asad. All of these people testified for the State at trial, with the exception of the decedent, Abdulah Asad.

The State maintained that around 3:15 p.m. on the date in question, a Suzuki jeep approached the aforementioned group of men and the individuals in the jeep exchanged words with Murray. The persons in the jeep then drove away, but they later returned as promised. When they returned in the jeep, they were accompanied by a group of men who arrived in a gray Chevrolet Nova. The passengers in both

vehicles exited and began to display the sign of a street gang known as the Black Gangster Disciples. The group included defendant, Hennon and Richard Terrell. Verrett testified that defendant was pointing people out and saying, "shoot him, shoot him." Esau Asad maintained that defendant said, "I'll pop you." Murray stated that defendant said, "pop that shorty, pop him."

When this interaction ended, the group that defendant arrived with got back into their vehicle and drove away. Verrett testified that defendant and Hennon left in the Nova, and that the car made a U-turn about one block away from the location where the men had argued and started to return. Verrett further testified that as the car approached him, he saw defendant, Hennon and Terrell. Verrett stated that Hennon was the driver. Verrett testified that defendant was sitting in the front seat on the passenger side, that he had his arm stuck out of the window, and that he had a gun in his hand. Verrett related that as the Chevrolet approached him, "Terrance Mack stuck his arm out of the window and started firing." Similarly Esau Asad, Harris and Miller all testified that Hennon was the driver and that defendant was the gunman. Several shots were fired, one of which fatally wounded Abdulah Asad while another hit Murray in the arm. The car moved away from the scene after the shots were fired.

Police officer Earl Parks arrived on the scene shortly thereafter. Officer Parks transported the unconscious Abdulah Asad, his brother Esau Asad and the injured Jason Murray to the hospital. Officer Parks announced that a shooting had occurred over the police radio. Police officer Ronald Forgue heard the message and spotted the gray Chevrolet five to six minutes later. The Chevrolet stopped under a viaduct where defendant and Terrell exited the vehicle. After a brief foot chase both men were arrested. Shortly thereafter, Hennon was arrested.

Later that day, around 8:20 p.m., Esau Asad, Harris, and Miller went to Chicago police Area 2 police headquarters to view a lineup of suspects in the shooting. All three eyewitnesses identified defendant in the lineup as the gunman. After the aforementioned three witnesses testified, the court ordered that the two juries be separated for the rest of the proceedings.

At defendant's trial, the sole issue was whether defendant was the gunman. Defendant's testimony is distinguishable from the State's version of events in that while he admitted that he participated in the argument which took place near Chicago Vocational High School, he denied being in the Chevrolet when the shooting occurred. Defendant testified that he left the scene in the Suzuki after the argument.

According to defendant, on September 9, 1988, he met Hennon and Terrell, who were sitting in a gray Chevrolet Nova at 96th and South Oglesby. Defendant testified that they then saw Haroon Binwalee, Mark Watts and Terrance Hill, who were driving in Binwalee's Suzuki jeep. Defendant stated that Binwalee, Hill and Watts asked him, Hennon and Terrell to accompany them to the Chicago Vocational High School, where they were having a disagreement with members of a street gang known as the Vice-Lords. Defendant testified that he, Hennon and Terrell agreed to assist Binwalee. Defendant testified that after both vehicles arrived at their destination, he engaged in an argument with members of the Vice-Lords. Defendant admitted that he was a member of the Black Gangster Disciples street gang. According to defendant, both groups exchanged gang signs and slogans. Defendant testified that he then left the scene in the jeep with Binwalee and Watts.

According to defendant, Binwalee and Watts then dropped him off at his home located at 9612 South Oglesby. Defendant testified that he spoke to his aunt upon his arrival at home. Defendant maintained that Hennon and Terrell later arrived at his home in their Chevrolet, at which time he got into the car with them and left. Defendant's aunt, Mamie Mack, testified that she was present when Hennon and Terrell arrived and drove away with her nephew. Defendant was then arrested.

Initially, defendant was taken to Area 4 police headquarters. Defendant alleged that while he was at the station, he was taken out to the front desk where he was exposed to witnesses who later identified him in the lineup as the gunman. The police and the witnesses later denied that this incident occurred. Defendant was then transported to Area 2 police headquarters for questioning. It was there, at 8:20 p.m., where defendant was identified in a lineup.

With respect to physical and nontestimonial evidence of the crime, no weapons or shells were recovered from the scene of the crime, the Chevrolet, or from defendant's person. In addition, no gunshot residue test was conducted on any of the occupants, although one was requested by Officer Ronald Forgue.

After the close of the evidence, the jury found defendant guilty of first degree murder, attempted first degree murder, armed violence and aggravated battery. After hearing evidence in aggravation and mitigation, the trial court sentenced defendant to concurrent terms of 60 years' imprisonment for first degree murder, 30 years' imprisonment for attempted first degree murder, and 30 years' imprisonment for armed violence.

First, we will address the issue of whether the trial court violated defendant's rights to due process and a fair trial when it refused to allow him to introduce a statement made by his codefendant Hennon. Defendant contends that his rights to due process and a fair trial were denied when the trial court refused to allow him to introduce a hearsay statement made by Hennon as a declaration against penal interest. Defendant sought to admit the first of two extrajudicial statements made by Hennon in which Hennon maintained that Hill was the gunman. The trial court, after hearing arguments on the question, ruled that Hennon's statement should not be admitted into evidence because the statement was not trustworthy. The State maintains that the trial court properly barred the admission of Hennon's statement because it did not meet the requisite standard of trustworthiness. If we find for defendant on this issue, the State argues in the alternative that defendant's conviction should be affirmed because any error made by the trial court was harmless beyond a reasonable doubt.

■ When an extrajudicial statement contains sufficient indicia of reliability so as to be rendered trustworthy, said statement is admissible at trial pursuant to the declaration against penal interest exception to the hearsay rule. (*People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488 N.E.2d 995, 999.) The question to be considered in judging the admissibility of a declaration of this nature is whether said statement was made under circumstances that provided a considerable assurance of its reliability. (*Bowel*, 111 Ill. 2d at 67, 488 N.E.2d at 1000.) In *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the Supreme Court mandated that the following four factors be considered in determining whether a hearsay statement against penal interest is trustworthy and admissible: (1) whether the declarant confessed spontaneously to a close acquaintance shortly after the crime occurred; (2) whether other evidence corroborates the confession; (3) whether the confession was self-incriminating and unquestionably against the declarant's interest; and (4) whether the declarant was present in the courtroom, under oath, subject to cross-examination by the State, and in a position for the trier of fact to weigh his demeanor and responses if there was any question regarding the truthfulness of his statement. (*Chambers,* 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49; see also *People v. Murray* (1990), 201 Ill. App. 3d 573, 578, 559 N.E.2d 174, 177.) The aforementioned factors are indicia of trustworthiness and not strict requirements of admissibility. *Bowel*, 111 Ill. 2d at 67, 488 N.E.2d at 1000.

This court has ruled, however, that the admission of evidence is within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent a clear abuse of discretion. *Bowel*, 111 Ill. 2d at 68, 488 N.E.2d at 1000; *Murray*, 201 Ill. App. 3d at 578, 559 N.E.2d at 176.

In the present case, the record shows that the trial court properly exercised its discretion because defendant failed to demonstrate that Hennon's statement was reliable and trustworthy. With regard to the first *Chambers* guideline, we find that the statement in question was not confessed by Hennon spontaneously to a close acquaintance shortly after the shooting occurred. Defendant argues that the statement in question is trustworthy because it was made in the presence of a police officer. We disagree. Defense counsel made the following offer of proof regarding Hennon's statement:

"[DEFENSE COUNSEL]: By way of offer of proof, if we were able to call Detective Gallivan concerning that 7:05 p.m. statement of Adrian Hennon, I believe the testimony of Detective Gallivan would be that he spoke to Adrian Hennon at 7:05 p.m. at Area 2 in interview room one, that Mr. Hennon was in custody at that time, and he stated at that time that he, Adrian Hennon, met Terrell up by 95th and Jeffrey.

That we then saw Terrance [H]ill and Terrance Mack, and some other boys, in the Suzuki [j]eep. I didn't know who the other guys were. They were going up to see us because they were having problems with some guys up there.

We then drove up there with them. Terry and Terrance drove with me and Ricky. We got to the school. They all got out of their cars, except for me and Ricky. They went across the street and said something to some guys, and then came back to the car.

Terrance Hill got in my car in the back seat. He told us to turn around and drive past the park.

When we got by the park, he began shooting out the back window at a crowd of kids in the park. We then drove back to the manor and we met up with the [j]eep again.

Terrance Hill got out of the car and Terry Mack got back in our car. Hill got in the [j]eep and drove away. We then drove away, and a little while later, we were stopped by the police.

Terrell and Mack jumped out and ran. I was stopped a few blocks away.

That I believe would be the testimony if Officer Gallivan were called in that matter, your Honor."

Hennon made this confession to the police and not to a close acquaintance.

With respect to the second *Chambers* criterion, we find that no other evidence corroborates the statement in question. Esau Asad, Harris, Miller and Verrett all identified defendant in a lineup as the gunman, and they later testified that they were eyewitnesses to the crime and that defendant was the gunman. Moreover, after Hennon made the above statement, he tendered another written statement which is inconsistent with his first statement printed above. The material inconsistency between the two statements is that Hennon named defendant as the gunman in his handwritten statement, while he named Hill as the shooter in his earlier oral statement made in the presence of the police. The court concluded that the lack of evidence to corroborate the statement in question was significant. The trial court ruled that the statement in question was inadmissible because "the inconsistencies themselves undercut the trustworthiness of the statement seeking to be admitted." The trial court concluded that "the statement by Hennon is in derogation with the statements given by numerous other persons, and even *** in derogation of other statements by him." For the above reasons, we find that the trial court's ruling with respect to the admissibility of Hennon's statement was proper.

Regarding the third *Chambers* factor, we find that the statement in question was not made against Hennon's penal interest. Defense counsel argues that Hennon's statement was contrary to his penal interest because it implied that Hennon was the driver of the vehicle from which the victims were shot. At trial, however, defendant, the State and the trial judge all agreed that this statement indicated that Hennon was a passenger, not the driver. In addition, Hennon's handwritten statement clearly indicates that Terrell, and not Hennon, was the driver at the time of the shooting. We therefore find that the statement in question was not made against Hennon's penal interest because Hennon was attempting to decrease his culpability for the crime by making the statement.

With regard to the fourth *Chambers* guideline, the court had questions concerning the veracity of Hennon's statement, but Hennon was not subject to cross-examination because he invoked his fifth amendment right against self-incrimination. U.S. Const., amend. V.

In summary, defendant has failed to show that the statement in question complies with even one of the four *Chambers* guidelines. Thus, we conclude that there is no indicia of trustworthiness with regard to the statement in question. Defendant has failed to demon-

strate that the trial court abused its discretion when it refused to admit the statement in question as evidence. Accordingly, we find that the trial court did not violate defendant's rights to due process and a fair trial by refusing to allow him to introduce a statement made by Hennon.

Next, defendant alleges that the trial court encroached upon his constitutional right to present his theory of the case by trying him and Hennon simultaneously in separate trials. The State maintains that defendant's argument has no merit because he could have agreed to a joint trial if he had wanted the jury to hear Hennon's testimony.

In Illinois, it is constitutionally permissible for a trial judge to conduct simultaneous trials before two juries in the same courtroom. (*People v. Ruiz* (1982), 94 Ill. 2d 245, 259, 447 N.E.2d 148, 153.) "The question of whether a severance should be granted in a particular case is a matter largely within the discretion of the trial judge." (*Ruiz*, 94 Ill. 2d at 257, 447 N.E.2d at 152.) Severance will be upheld by a court of review where the trial judge adequately prepared the jurors in both juries and the defendant cannot show that his jury was confused or unable to render a decision fairly. *Ruiz*, 94 Ill. 2d at 259-60, 447 N.E.2d at 153-54.

In the present case, the record shows that the trial judge adequately prepared the jurors in both juries for the respective trials. The trial court explained to both juries that as the finders of fact, they must focus upon the case concerning the particular defendant whose guilt or innocence they have been charged to determine. The trial judge also explained that the fate of the defendant in the other trial must not affect the jurors' consideration of the ultimate issue of the culpability of the defendant whose guilt or innocence they were charged to determine. In addition, each jury was made aware of the presence of the other jury, and the court took great care in insuring that both juries heard only the evidence which was admissible against both defendants. The court retired a jury when certain inculpatory evidence which was irrelevant to its case was introduced. After the State rested, the two juries separated for deliberations. There is no indication in the record that the jurors were confused or were unable to render their decision fairly. Accordingly, we find that the trial court did not encroach upon defendant's constitutional right to present his theory of the case by trying him and Hennon simultaneously in separate trials.

Defendant next alleges that the trial court violated his constitutional right to present his defense by refusing to allow him to present testimony that the police ordered a gunshot residue test to be taken

of his hands 20 minutes after the shooting, but that said test was not conducted. The State maintains that the trial court correctly denied the proffered testimony because the court's ruling was well within its discretionary authority and was not an abuse of discretion which manifestly prejudiced defendant.

During the cross-examination of Officer Forgue, the following colloquy occurred:

> "[DEFENSE COUNSEL]: Officer, in regard to the investigation of the shooting at 2015 East 87th Street, you personally ordered a hand analysis—
>
> [THE STATE]: Objection.
>
> THE COURT: The Court sustains the objection."

This colloquy was followed by a sidebar whereupon defense counsel argued that the fact that a gunshot residue test was requested but not conducted was significant. The trial court disagreed. The trial judge stated, "that doesn't prove anything." The trial judge, however, did allow defense counsel to question Officer Forgue in the following manner:

> "[DEFENSE COUNSEL]: To your personal knowledge, was any hand analysis ever performed.
>
> [OFFICER FORGUE]: To my personal knowledge, no."

Later on during the course of the trial, Detective James Butler testified on direct examination that no gunshot residue test was conducted upon any of the persons arrested.

Finally, during closing arguments, defense counsel again referred to the fact that a gunshot residue test was requested but not performed:

> "[DEFENSE COUNSEL]: And when he went to the police station, did they perform any kind of analysis on him to see if he—
>
> [THE STATE]: Objection.
>
> THE COURT: Court will indicate counsel is making an argument. Jury heard the evidence.
>
> [DEFENSE COUNSEL]: Did they perform a hand analysis to see if he fired the weapon? No. And according to what they believe, they have him in custody within a half hour, but they don't do that."

While a defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt concerning his guilt, questions concerning the character and presentation of the evidence are within the discretion of the trial court, and the exercise of that discretion will not be interfered with unless there has been an

abuse resulting in prejudice to the defendant. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 966, 455 N.E.2d 733, 794, see also *People v. Calloway* (1979), 79 Ill. App. 3d 668, 673, 398 N.E.2d 917, 920.) Similarly, "the scope of cross-examination is largely discretionary and will be overturned only where an abuse of that discretion manifestly prejudices the defendant." *People v. Wheeler* (1990), 194 Ill. App. 3d 178, 183, 550 N.E.2d 1170, 1174.

■ In the present case, defendant has failed to demonstrate that the trial court abused its discretion with respect to its ruling upon the presentation of evidence concerning the proposed gunshot residue analysis. The trial court's regulation of the presentation of the evidence in question was proper. Defendant was allowed to elicit testimony that a gunshot residue test was not performed during cross-examination, direct examination, and closing arguments. Defendant was not prejudiced by the trial court's ruling because the overwhelming evidence against defendant, including the testimony of four eyewitnesses, makes it clear that the result of the trial would not have been different had the court ruled in the opposite manner. Accordingly, we find that the trial court did not violate defendant's constitutional right to present his defense.

Finally, defendant contends that the trial court abused its discretion when it sentenced him to 60 years' imprisonment for first degree murder and 30 years' imprisonment for attempted first degree murder, on the basis of his young age, lack of "serious" criminal background and his potential for rehabilitation. The State maintains that defendant has waived his right to raise this issue on appeal because he failed to mention it in his post-trial motion. If we find for defendant, the State argues in the alternative that his sentence was well within the trial court's discretion and should be affirmed in light of the evidence adduced at trial.

■ We find that defendant waived his right to appellate review of this issue. A defendant reserves his right to appeal the trial court's disposition of a matter by objecting to the alleged impropriety in a timely manner and by mentioning the objection in a motion for a new trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.

Illinois Supreme Court Rule 615(a), however, provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a); see also *People v. Sherrod* (1991), 220 Ill. App. 3d 429, 433, 581 N.E.2d 53, 56.) "[P]lain error encompasses those errors which are obvious, which affect the substantial rights of the ac-

cused, and which, if uncorrected, would be an affront to the integrity and reputation of judicial proceedings." (*People v. Stuckey* (1992), 231 Ill. App. 3d 550, 568, 596 N.E.2d 646, 658-59. See also *People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461, 471; *People v. Bass* (1991), 220 Ill. App. 3d 230, 239, 580 N.E.2d 1274, 1280.) "The criterion for the application of the plain error rule in criminal cases is whether the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial or sentencing hearing." *Young*, 128 Ill. 2d at 47, 538 N.E.2d at 471; *Stuckey*, 231 Ill. App. 3d at 568, 596 N.E.2d at 659.

The plain error rule is not applicable to this case. The trial judge made the following statement upon sentencing defendant:

"The court considers the matters brought to the court's attention by way of aggravation and mitigation. The court also considers the statement made by the defendant. The court has read and considers the pre-sentence investigation report. The defendant is now 18 years of age and at the time of the commission of this offense the defendant was below 17.

The court does consider his age. The court also considers the aggravating factor of the age of the deceased, this 11 year-old boy, who was in the park. The court would indicate it is fair to say he was minding his own business and then he ended up having been fatally wounded ***.

* * *

The court considers the acts and actions of the defendant to be that of an adult and he acted like an adult and the court considers that the sentence that is to be imposed for an adult offense *** must fit the crime.

***

The court does consider that the aggravated nature of this offense warrants more than the minimum sentence and the imposition of the minimum sentence would derogate the seriousness of the offense.

***

This is a case based upon the age of the defendant, however the court does not consider extended term to be required to serve the ends of justice. The parameters are from 20 to 60 in this case and the court considers that when little boys are playing in the park and people go in because they are gang members they start shooting in the park, they can expect the long arm of the law to do justice.

The court considers justice in this case to be 60 years on the murder conviction. The defendant is so sentenced. The court also considers that on the attempt murder conviction justice requires a sentence of 30 years. The court accordingly imposes those sentences in this case.

\* \* \*

The defendant was also found guilty of aggravated battery and great bodily harm, and aggravated battery, deadly weapon. The aggravated battery great bodily harm, the court considers to have been superseded by the attempt' first degree murder conviction and the aggravated battery deadly weapon, the court also considers to be superseded. The armed violence based on great bodily harm, there is great bodily harm and although that has been superseded, the armed violence conviction is such that that conviction stands. And the court hereby sentences the defendant on the armed violence conviction to 30 years. These will be concurrent sentences. The court will impose no sentence on aggravated battery great bodily harm and will impose no sentence on aggravated battery deadly weapon."

The above statement reflects that the trial judge sentenced defendant after careful thought, deliberation, and consideration of the record. The record shows that the trial judge considered factors in aggravation and mitigation as required by section 5—4—1 (a)(3) of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1 (a)(3).) Moreover, the sentences given to defendant were within the statutory parameters for minimum and maximum sentences for the offenses for which defendant was convicted. (Ill. Rev. Stat. 1987, ch. 38, pars. 33A—3, 1005—8—1(a)(1), 1005—8—4.) Accordingly, we conclude that the trial court did not commit plain error when it sentenced defendant to concurrent terms of 60 years' imprisonment for first degree murder, 30 years' imprisonment for attempted first degree murder, and 30 years' imprisonment for armed violence. Defendant is not entitled to review or modification of his sentence.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.