THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE RIVERA, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0471

Opinion filed March 30, 1994.

Dennis A. Giovannini and Herbert L. Goldberg, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Jose Rivera, was found guilty of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). Defendant was sentenced to a term of 30 years in the Illinois Department of Corrections for possession of a controlled substance with intent to deliver, but was not sentenced for armed violence. We reverse the conviction for possession of a controlled substance with intent to deliver and remand for a new trial, and we reverse the conviction for armed violence.

The issues before this court for review are (1) whether the trial court erred when it denied defendant's motion to quash arrest and suppress evidence; (2) whether the trial court abused its discretion in denying defendant's motion to dismiss the indictment on the basis that a police officer who had testified for the State tampered with a defense witness in an attempt to persuade her not to testify during defendant's trial, after she testified favorably regarding defendant during the hearing on his motion to suppress; (3) whether the trial court erred when it granted the State's motion *in limine* precluding testimony concerning certain statements made by a third party; (4) whether defendant was proven guilty of possession of a controlled substance with intent to deliver beyond a reasonable doubt; and (5) whether defendant was proven guilty of armed violence beyond a reasonable doubt.

Prior to trial, defendant made a motion to quash arrest and suppress evidence on the basis that the police made a warrantless search of his home without probable cause and that they improperly seized cocaine, money and a gun. At the hearing on this motion, defendant and the State presented two greatly conflicting versions of the arrest and search.

Several witnesses testified for the defense at the hearing including defendant, Alicia "Tina" Rivera (Tina), Carlos "Carlito" Carerro and Edward "Bobby" Sanchez. Tina testified that on May 11, 1989, she was engaged to and living with defendant at 4741 West Altgeld in Chicago, Illinois. Tina testified that between 7 and 7:30 p.m. that same night, she unlatched the door for Carerro to enter whereupon some police pushed the door in and entered her home. According

to Tina, the police ransacked the apartment. Tina further testified that defendant entered the apartment through the back door around 9:30 or 10 p.m. Tina stated that she could not see defendant in the kitchen but that she heard him talking to the police.

Carerro testified that on May 11, 1989, he was on his way to his brother's house when a plainclothes police officer grabbed him and struck him in the mouth. He further testified that another police officer said: "That's not him." Carerro testified that the police officers then instructed him to ring the doorbell of the first-floor apartment at 4741 West Altgeld whereupon Tina opened the door and the police pushed themselves into the apartment.

Sanchez resided in the second-floor apartment at 4741 West Altgeld. Sanchez testified that at 8:30 or 9 p.m. on the night in question, he heard the doorbell ring and he heard six or seven men saying: "Open the door. Open the door." Sanchez also testified that he heard noises behind the building. Sanchez identified defendant's exhibits 4, 5, 6, 7, and 11 as depicting damage to the apartment caused by the police.

Defendant also testified in his own behalf. Defendant testified that his nickname was "Tallboy." Defendant testified that he left home on May 11 at 2:30 p.m. and returned home around 10:30 p.m. Defendant stated that as he was coming in the back door of his home, he found two police officers in his kitchen. Defendant testified that the police then handcuffed him and confiscated two vehicles and a briefcase.

The State called police officer Al Lucas. Officer Lucas was a member of the Area 5 SNIP Unit (Street Narcotics Impact Program). The SNIP Unit had defendant's block under surveillance. Officer Lucas and his partner, police officer Eric Sanders, were observing the house at 4741 West Altgeld. Defendant came out of his residence when some cars pulled up to the curb. Officer Lucas then walked down Altgeld Street, where he encountered defendant crouched down in a baseball catcher's position near a car. Officer Lucas then approached defendant and said: "Tallboy, how are you doing?" Officer Lucas testified that defendant then stood up. As defendant stood up, a package which appeared to contain cocaine fell from his clothing. Defendant then fled. Officer Lucas testified that defendant ran into his front door, through the living room into the kitchen and then out the back door and upstairs. Officer Lucas followed in hot pursuit and entered the apartment. Defendant was then apprehended and arrested. The police recovered an automatic handgun, a paint gun and a briefcase full of money from the apartment.

In rebuttal, defendant called Miriam Fantuzzi. Mrs. Fantuzzi

testified that her husband, Oscar Fantuzzi, came home on May 11, 1989, looking "all beat up." Mrs. Fantuzzi stated that her husband told her that he got into trouble with the police because they caught him with a kilogram of cocaine. Mrs. Fantuzzi maintained that her husband told her that the police told him to tell them that he obtained the cocaine from defendant. The State objected but the testimony was admitted over the State's objection. Ultimately, the trial judge denied defendant's motion to quash and suppress.

The trial began on November 14, 1989. Linda Jenkins, a chemist, testified that the bag which was recovered by the police contained cocaine. The police who testified during the hearing on the motion to quash and suppress offered similar testimony at trial.

Pursuant to an order *in limine*, defendant was precluded from calling Mrs. Fantuzzi to testify to the out-of-court statements made to her by her husband. At trial, defense counsel attempted to make an offer of proof of the testimony of Miriam Fantuzzi. The trial court precluded defense counsel from making an offer of proof. Defense counsel, however, told the court that she would testify Oscar Fantuzzi had drugs in his possession and that he told her that the police took the drugs from him and blamed defendant for their possession. Thus, Mrs. Fantuzzi was unable to testify and Mr. Fantuzzi declined to testify, invoking the fifth amendment.

Defendant was convicted of possession with intent to deliver 900 grams or more of cocaine and armed violence. The trial judge sentenced defendant only on the possession with intent to deliver charge. When pronouncing the sentence, the trial judge stated: "The sentence is on the possession with intent to deliver. It just merges into the sentence ***."

First, defendant contends that the trial court's denial of his motion to quash arrest and suppress evidence was manifestly erroneous where the testimony of police officers was impeached by numerous omissions of material facts and where the court failed to properly consider the statements of a third party, Oscar Fantuzzi, against his penal interest. We disagree.

■ In regard to defendant's argument that the trial court's decision on his motion was manifestly erroneous because the testimony of the police officers was impeached by numerous omissions of material facts, said allegation is not borne out by the record. Furthermore, defendant's argument that the trial court's denial of the motion was erroneous on the basis that the court failed to properly consider the statements of Oscar Fantuzzi is also contrary to the record.

Miriam Fantuzzi testified that on May 11, 1989, around 10:30 or 11 p.m., her husband Oscar came home "all beat up." Defense counsel

argued that the statement from Oscar to Miriam should be admitted as a spontaneous declaration. The statement was admitted into evidence. Secondly, Oscar Fantuzzi gave defense counsel a 20-page written statement. This statement was also admitted into evidence. The record shows that this evidence was considered by the trial court and there is no indication that the trial court's consideration of said evidence was improper or manifestly erroneous.

It is plain that the trial court was presented with two completely different versions of the arrest and search. The trial court chose to believe the evidence presented by the State and denied defendant's motion. After carefully reviewing the record, we hold that the trial court's ruling on the motion to quash arrest and suppress evidence was not manifestly erroneous. Next, defendant alleges that the trial court abused its discretion when it denied his motion to dismiss the indictment on the basis that a police officer, who had testified for the State, communicated with Miriam Fantuzzi, a defense witness, in an attempt to persuade her not to testify during defendant's trial, after she testified favorably regarding defendant during the hearing on his motion to suppress.

Mrs. Fantuzzi was called as a witness on defendant's motion to quash and suppress on October 2, 1990. On October 10, 1990, defense counsel brought a motion to dismiss the indictment. Upon making the motion, the defense attorney stated: "The court may remember Miriam Fantuzzi was called by defendant. She became a State confidential informant. For all I know she was a State confidential informant when we called her. *** The State has tampered * * *. They have taken my rebuttal witness and made her a State witness."

■ The record shows that the prosecution told defense counsel that on October 4, 1990, it learned that Mrs. Fantuzzi was a police informant, but that she was not an informant for the present case and she had given no information concerning the allegations against defendant in the present case. There is no evidence that a police officer communicated with Mrs. Fantuzzi in an effort to persuade her not to testify during defendant's trial. The trial court's denial of defendant's motion was therefore proper. We further note that it was not the conduct of the police which precluded Mrs. Fantuzzi from testifying at trial, it was the court's November 14, 1990, ruling on defendant's motion *in limine* which we now address.

Defendant alleges that the trial court committed reversible error in granting the State's motion *in limine* regarding crucial defense testimony concerning the court-reported statement of Mr. Fantuzzi made under oath, and his statement to his wife regarding his admission that the police had recovered a kilogram of cocaine from him and "planted" it on defendant.

The grant or denial of a motion *in limine* is a matter within the trial court's discretion. (*Moore v. Bellamy* (1989), 183 Ill. App. 3d 110, 115, 538 N.E.2d 1214, 1217.) In ruling on a motion *in limine*, the threshold question is whether the rules of evidence require the exclusion of the subject matter of the motion. (*Moore*, 183 Ill. App. 3d at 116, 538 N.E.2d at 1218.) If the subject matter should be excluded, the trial court then has the discretion to grant or deny the motion, leaving it to the movant to specifically object at trial. If the subject matter should not be excluded, the motion must be denied. *Moore*, 183 Ill. App. 3d at 116, 538 N.E.2d at 1218.

In the present case, the State filed a motion *in limine* to bar the admission of testimony by Oscar and Miriam Fantuzzi. The State argued that Mrs. Fantuzzi's statement was inadmissible because there was no established nexus between the statement by Oscar to Miriam and the statement that he later made under oath pertaining to the conduct of certain police officers. The State also argued that Mr. Fantuzzi's statement was inadmissible because the State did not have an opportunity to cross-examine him at the time he made his statement and that they would be precluded from doing so at trial because he invoked the fifth amendment and refused to testify. The State, however, conceded that it refused to grant Mr. Fantuzzi immunity. The court granted the State's motion *in limine* on the basis that Mr. Fantuzzi did not specifically state that he was taken to Tallboy's house and that there was no "indicia of reliability with regard to the testimony of both Oscar Fantuzzi and Miriam Fantuzzi."

We find that the trial court misapplied the relevant criteria in determining whether the statements were reliable and that it erred when it did not allow the defense to make an offer of proof pertaining to the potential testimony of Mrs. Fantuzzi.

No evidence is admissible unless it is relevant. In order to be relevant, evidence offered must have a tendency to make the existence or nonexistence of a fact or consequence more or less probable than it would be without the offered evidence. (*People v. Schultz* (1987), 154 Ill. App. 3d 358, 366, 506 N.E.2d 1343, 1348.) Here, the statements were both relevant and material to the central issues in this case because they rendered defendant's willful and knowing possession of cocaine less probable because they would also have tended to make the argument that the police had "planted" the cocaine on the defendant after previously obtaining it from Oscar Fantuzzi more plausible. We also note that at the hearing on defendant's motion to quash and suppress, the trial court held that the evidence in question was in fact relevant and material, and the trial court received the

statements of the Fantuzzis into evidence for purposes of the motion to quash and suppress.

The recorded statement of Oscar Fantuzzi should have been admitted because it was relevant and it was made under oath. The statement made by Mr. Fantuzzi to his wife should have been admitted both because it was relevant and because it constituted a declaration against penal interest.

An extrajudicial statement may be admitted into evidence if it contains a sufficient indicia of reliability so as to be rendered trustworthy, pursuant to the declaration against penal interest exception to the hearsay rule. (*People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488 N.E.2d 995, 999; *People v. Mack* (1992), 238 Ill. App. 3d 97, 102, 606 N.E.2d 165, 169.) The question to be considered in judging the admissibility of a declaration of this nature is whether said statement was made under circumstances that provided a considerable assurance of its reliability. *Bowel*, 111 Ill. 2d. at 67, 488 N.E.2d at 1000; *Mack*, 238 Ill. App. 3d at 102, 606 N.E.2d at 169.

In *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49, the United States Supreme Court held that the following four factors should be considered by courts when determining whether or not a hearsay statement against penal interest is trustworthy and admissible: (1) whether the declarant confessed spontaneously to a close acquaintance shortly after the crime occurred; (2) whether other evidence corroborates the confession; (3) whether the confession was self-incriminating and unquestionably against the declarant's interest; and (4) whether the declarant was present in the courtroom, under oath, subject to cross-examination by the State, and in a position for the trier of fact to weigh his demeanor and responses if there was any question regarding the truthfulness of his statement. (See also *Mack*, 238 Ill. App. 3d at 102, 606 N.E.2d at 169; *People v. Murray* (1990), 201 Ill. App. 3d 573, 578, 559 N.E.2d 174, 177.) The aforementioned factors are indicia of trustworthiness but are not strict requirements of admissibility. *Bowel*, 111 Ill. 2d at 67, 488 N.E.2d at 1000; *Mack*, 238 Ill. App. 3d at 102, 606 N.E.2d at 169.

Here, the statement in question had a sufficient indicia of reliability. With regard to the first *Chambers* guideline, the statement made by Mr. Fantuzzi to his wife was made on May 11, 1989, at approximately 10:30 p.m. and the crime occurred on that same date around 9 p.m. This was a spontaneous admission shortly after the commission of a crime. With respect to the second *Chambers* guideline of whether other evidence corroborates the confession, no other evidence corroborates the statement in question. The statement,

however, was corroborated by its level of detail. Mr. Fantuzzi mentioned the police, a kilogram of cocaine, and an alleged statement by a police officer: "Just tell us you got this from Tallboy." The third *Chambers* guideline of whether the confession was self-incriminating and contrary to the declarant's penal interest was also satisfied. The declaration was clearly against Mr. Fantuzzi's penal interest because he admitted to having possessed one kilo of cocaine. Regarding the fourth *Chambers* guideline, the State argued that Mr. Fantuzzi was not subject to cross-examination. We are not persuaded by this argument.

In *People v. Ireland* (1976), 38 Ill. App. 3d 616, 621-22, 348 N.E.2d 277, 281-82, this court ruled that the State had effectively prevented itself from cross-examining a declarant who invoked the fifth amendment by refusing to grant the declarant immunity and that the declarant therefore could not have been held to have been unavailable. The precedent in *Ireland* is applicable to the present case. The State in effect made Mr. Fantuzzi unavailable by refusing to grant him immunity.

The trial court should have afforded the jury the opportunity to evaluate the Fantuzzis' statements as it was up to the finder of fact to assign weight to their testimony. The failure of the trial court to admit these declarations severely prejudiced defendant by precluding him from effectively presenting and arguing his theory of the case. The trial court's grant of the State's motion *in limine* was, therefore, reversible error. On this basis, we reverse the conviction for possession of a controlled substance with the intent to deliver and remand for a new trial.

■ Defendant's last argument concerning the conviction for possession with intent to deliver is that the evidence presented at trial was insufficient for a jury to conclude that he was guilty beyond a reasonable doubt. After reviewing all of the evidence, we conclude that the evidence adduced at trial was sufficient for a jury to conclude that defendant was guilty beyond a reasonable doubt. This finding shall not be binding as to the new trial. Rather, our consideration concerning the sufficiency of the evidence serves to protect the defendant's constitutional right against double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375; *People v. Hammock* (1984), 121 Ill. App. 3d 874, 882-83, 460 N.E.2d 378, 384-85.

Defendant also argues that the evidence admitted at trial was insufficient for a jury to conclude that he was guilty of armed violence beyond a reasonable doubt. The State argues that this issue is not properly before this court because defendant was not sentenced on the conviction for armed violence.

■ Ordinarily, an appeal cannot be taken unless there is a final order, which in a case involving a criminal conviction is the imposition of sentence. However, where the trial court failed to impose a sentence for a conviction because it believed it merged into another conviction on which it did impose sentence, a reviewing court may properly consider both convictions on a single appeal. (See *People v. Dixon* (1982), 91 Ill. 2d 346, 352, 438 N.E.2d 180, 183-84.) In the present case, this is precisely what happened. The trial court did not impose a sentence on defendant for the armed violence count because it believed that it merged into the count for possession of a controlled substance with intent to deliver. Therefore, we may properly review the conviction for armed violence as well as the conviction for possession of a controlled substance.

The State also argues that the conviction for armed violence was not properly preserved for appeal. We will, however, address the issue as to armed violence pursuant to the plain error doctrine under Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5).

The relevant inquiry upon review of the sufficiency of the evidence of a defendant's guilt is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant committed the essential elements of the crime for which he was convicted beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 566, 596 N.E.2d 646, 657.) Upon judicial review of a criminal case, all evidence must be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

Upon considering the evidence which we have reviewed in the light most favorable to the prosecution, we hold that there was a reasonable doubt as to defendant's guilt of armed violence as a matter of law. It was not the intent of the legislature for a defendant to be convicted of armed violence simply because a weapon was located anywhere in the defendant's home. (*People v. King* (1987), 155 Ill. App. 3d 363, 368-69, 507 N.E.2d 1285, 1288.) There must be a relationship between the weapon and the defendant or the potential hazard which exists while the defendant is armed while committing a felony. (*King*, 155 Ill. App. 3d at 370, 507 N.E.2d at 1289.) Neither existed in this case.

In the present case, Officer Lucas testified that he chased defendant from the street in front of the building through the open front door into the kitchen. Officer Sanders testified that defendant was then apprehended inside of the house and returned to the kitchen. In the kitchen, on top of a table was a loaded automatic weapon.

According to Officer Sanders, defendant made no effort to touch the gun and the gun remained on the kitchen table while defendant ran past it. The police never saw defendant with the gun in his hand, nor did they see him place the weapon on the table.

We, therefore, hold as a matter of law that the State did not present sufficient evidence at trial for a jury to conclude that defendant was guilty of armed violence beyond a reasonable doubt. Accordingly, defendant's conviction for armed violence is reversed.

Accordingly, the judgment of conviction for possession of a controlled substance with intent to deliver is reversed and the case is remanded for a new trial as to that count. The judgment of conviction for armed violence is reversed.

Reversed and remanded.

TULLY, P.J., and GREIMAN, J., concur.