(No. 61450.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LAWRENCE BOWEL, Appellee.

*Opinion filed January 23, 1986.*

60

Neil F. Hartigan, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Jill Wine-Banks, Solicitor General, Mark L. Rotert and Marie Quinlivan Czech, Assistant Attorneys General, all of Chicago, and John X. Breslin and John M. Wood, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert J. Agostinelli, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE WARD delivered the opinion of the court:

After a jury trial in the circuit court of Peoria County, the defendant, Lawrence Bowel, was found guilty of theft from the person and robbery (Ill. Rev. Stat. 1983, ch. 38, pars. 16—1(a), 18—1). The trial court entered judgment on the robbery verdict only and sentenced the defendant to a term of 5 years. The appellate court reversed and remanded to the circuit court with directions to enter a judgment of conviction for theft from the person. (129 Ill. App. 3d 940.) We granted the People's petition for leave to appeal (94 Ill. 2d R. 315), and the defendant cross-appealed. 87 Ill. 2d R. 318(a).

On September 12, 1983, at about 12:30 a.m., while crossing a street in downtown Peoria, Delores Thomas and Mary Ann Hall noticed four men standing on the corner. One, the defendant, walked toward Thomas, who was carrying a purse in her left hand. Her arm was at her side, and she was holding the purse at the zipper where the purse opened. Hall was walking about 2 to 3 feet behind Thomas.

When the defendant reached Thomas, he took her left hand with his left hand, and "touched" her fingertips as he pulled the purse from her hand with his right hand, leaving her fingers "a little red" but not bruised. As the defendant took Thomas' left hand, he pushed it back, immobilizing her arm and causing her body to be "turned slightly." She then "turned and watched him" flee. As he passed Hall, Thomas shouted to her that the defendant had stolen her purse. Hall did not see the defendant take the purse, but saw him as he ran past her.

Thomas and Hall immediately reported the crime, giving complete descriptions of the four men to Peoria police. They described the purse snatcher as having a half-moon–shaped scar under his left eye and said he was carrying a radio with a rope shoulder strap. Shortly

afterwards, police brought in Michael Bowel and John Griffin, neither of whom was the purse snatcher, but Hall recognized them as two of the four men they had seen on the corner.

The next day Officer Dave Millard showed Thomas a group of photos, one being a photo of Glen Cooley. Thomas recognized Cooley as one of the group of four men. Somewhat remarkably, however, she did not tell this to Millard since the officer asked only for identification of the purse snatcher. When Millard specifically pointed out Cooley, Thomas answered that she was positive he was not the purse snatcher. Four days later, at a lineup with Cooley in it, Thomas stated again that Cooley was not the man. On September 18, Millard showed Thomas another group of photos from which Thomas identified a photograph of the defendant as being the man who took her purse.

The following day at the police station, the defendant told Millard that on the night of the crime he had been with Michael Bowel and John Griffin, who he said were his brothers, and Glen Cooley. As they were walking, they saw two women crossing the street. The defendant said that Cooley, who was carrying a tape player, then "took off toward the two women and snatched one of their purses." The next day, Thomas and Hall individually viewed a lineup and positively identified the defendant as the purse snatcher. At trial also both women identified the defendant.

The People contend that in taking the purse there was sufficient use of force to warrant a conviction of robbery. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1.) The defendant's response is that the offense was theft from the person, a lesser offense. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1.) He says that he did not strike or shove the victim; that there was no struggle for possession; and that the victim was completely surprised by the snatch-

ing as evident from her "lack of precaution" in the manner she carried the purse.

Our statute provides that robbery is committed when one "takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1983, ch. 38, par. 18—1.) "[T]he degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will." *People v. Williams* (1961), 23 Ill. 2d 295, 301; *People v. Ryan* (1909), 239 Ill. 410, 412; *Hall v. People* (1898), 171 Ill. 540, 542; *People v. Thomas* (1983), 119 Ill. App. 3d 464, 466.

We consider that the trial court was correct in holding there was a robbery and not a theft from the person.

This court's decision in *People v. Patton* (1979), 76 Ill. 2d 45, is distinguishable. In *Patton*, the victim was carrying her purse by her fingertips and her arm was at her side. As the defendant came beside the victim, he " 'swift[ly] grab[bed]' her purse, throwing her arm back 'a little bit,' " and fled. (*People v. Patton* (1979), 76 Ill. 2d 45, 47.) There the State argued that any amount of physical force used to overcome the force exerted by a victim in maintaining control over an object held in hand was sufficient to constitute robbery. In rejecting the State's argument, this court held that the "snatching" of the purse from the victim was not in itself sufficient use of force to constitute robbery. The court considered that where an article is taken " 'without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand' the offense will be held to be theft from the person rather than robbery." *People v. Patton* (1979), 76 Ill. 2d 45, 52.

In *Patton* there was no "sensible" violence. The force involved was seemingly imperceptible to the victim. The

opinion states that the victim "did not realize what was happening until after the defendant had begun his flight." (76 Ill. 2d 45, 48.) The question there was "whether the simple taking or 'snatching' of a purse from the fingertips of its unsuspecting possessor in itself" was sufficient force to constitute robbery. (76 Ill. 2d 45, 48.) Here there was more than a simple snatching. The force involved was greater. The victim was aware the defendant was approaching her. The defendant reached out and took hold of her left hand. He pulled the purse from Thomas' hand and at the same time pushed her hand behind her so she could not pull it toward her. This forcible pushing back and immobilizing of the hand was part of the act of taking the victim's purse. The victim's body was "turned slightly" as a result of the grabbing of the purse.

Looking at all the evidence of the incident, there was a taking of the purse by use of force and, thus, a robbery.

On his cross-appeal, the defendant contends that he was denied his right to an impartial jury when the trial court refused to ask prospective jurors these questions:

(1) "Have you ever greeted a stranger as an acquaintance because you mistook the stranger?"

(2) "Has a stranger ever greeted you because of a mistaken identity? Please explain."

The purpose of the *voir dire* examination is to assure the selection of an impartial jury; it is not to be used as a means of indoctrinating a jury, or impaneling a jury with a particular predisposition. *Moore v. Edmonds* (1943), 384 Ill. 535, 541; *People v. Teague* (1982), 108 Ill. App. 3d 891, 894.

The record shows that the trial court questioned the prospective jurors in great detail and that its *voir dire* examination was such as to give the defendant reasonable assurance that any prejudice or bias of a prospec-

tive juror would have been discovered. It cannot be said that the defendant's questions would have served the purpose of discovering bias or prejudice on the part of a prospective juror that would deny the defendant his right to a trial by a fair and impartial jury. The People's argument that the questions were for the purpose of educating jurors as to the defendant's theory of defense prior to trial, and as a means of selecting a jury that was receptive to that defense is convincing.

The trial court did not abuse discretion in not submitting the questions.

We would observe that a like issue was presented in *People v. Witted* (1979), 79 Ill. App. 3d 156. There the defendant submitted a question similar to those here for the *voir dire* examination. The court upheld the trial court's refusal to pose the question, stating there was "no basis for assuming that a person may harbor a bias or prejudice toward the essentially innocuous defense of mistaken identity." (*People v. Witted* (1979), 79 Ill. App. 3d 156, 164.) We find the same reasoning to apply here.

The defendant's reliance upon *People v. Moore* (1972), 6 Ill. App. 3d 568, is misplaced. There it was held that the trial court erred where it denied the defendant's request to question attitudes of prospective jurors on the defense of insanity. The decision is distinguishable. The questions concerned the defense of insanity, a defense which is known to be subject to bias or prejudice. Resolution of questions of mistaken identity depends upon the credibility of the witnesses and the weight of evidence, rather than upon a juror's predisposition toward a defense.

The defendant complains, too, that the trial court erred when it refused to admit testimony of a proposed defense witness, Lee Otis Howard, of a statement against penal interest allegedly made by Glen Cooley, the companion who, the defendant claims, stole the purse.

Earlier the trial court had permitted Herbert Hogan, the defendant's sister's boyfriend, and John Bowel, the defendant's father, to testify to a conversation with Cooley. They stated that on September 12, 1983, Glen Cooley told them that he, and not Michael Bowel and John Griffin, who had been arrested for the purse snatching, had taken the purse. Bowel also testified that Cooley told him that he was not worried about being arrested since he had not been identified. The trial court allowed the testimony though Cooley, who had been subpoenaed and for whom a writ of body attachment had issued, did not appear at the trial.

In what was in effect an offer of proof of Howard's proposed testimony, the trial court was informed of incriminating statements Howard allegedly overheard Cooley make to John Bowel. The court was not satisfied with the trustworthiness of the proposed testimony and refused to permit Howard to testify before the jury.

Generally an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest. (*People v. Tate* (1981), 87 Ill. 2d 134, 143; *People v. Craven* (1973), 54 Ill. 2d 419, 427, citing *People v. Lettrick* (1952), 413 Ill. 172, 178.) Such declarations may, however, be admitted where justice requires. (*People v. Lettrick* (1952), 413 Ill. 172, 178.) The Supreme Court of the United States, and this court as well, have held that where there are sufficient indicia of trustworthiness of such extrajudicial statements, a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049; *People v. Tate* (1981), 87 Ill. 2d 134, 143-44; *People v. Craven* (1973), 54 Ill. 2d 419, 429.) In *Chambers,* the court, in holding a declaration admissible,

stated that there were sufficient indicia of trustworthiness in that (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.

There has been some uncertainty as to whether all of the objective indicia of trustworthiness appearing in *Chambers* must be present before a statement against penal interest will be admitted in evidence. The defendant contends that the four factors enumerated in *Chambers* were simply indicia of the trustworthiness of the statement and are not to be regarded as requirements for admissibility. The People argue that the presence of all four factors are conditions of admissibility. *People v. Foster* (1978), 66 Ill. App. 3d 292, 294-95.

The court did not discuss this specific question in *People v. Tate* (1981), 87 Ill. 2d 134, or *People v. Craven* (1973), 54 Ill. 2d 419. The four factors which the court enumerated in *Chambers v. Mississippi* (1979), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49, are to be regarded simply as indicia of trustworthiness and not as requirements of admissibility. The question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide "considerable assurance" of its reliability by objective indicia of trustworthiness. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49; *People v. Tate* (1981), 87 Ill. 2d 134, 144.

In *Chambers* the Supreme Court of the United States, considering that there were four factors in the case which it deemed provided assurance of reliability,

held that the trial court erred in excluding from evidence the involved statement against penal interest. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048.) The court stated:

> "Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Chambers v. Mississippi* (1973), 410 U.S. 284, 302-03, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049.

Also, we note that under Federal Rule of Evidence 804(b)(3), promulgated subsequent to *Chambers*, the admissibility of a statement made against penal interest is determined simply by whether there are "corroborating circumstances [which] clearly indicate the trustworthiness of the statement." The rule makes no mention of any specific corroborating circumstance, which is of course consistent with the view that the Supreme Court did not prescribe the four factors as specific requirements for the admissibility of these statements.

"The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion." (*People v. Ward* (1984), 101 Ill. 2d 443, 455-56.) The court did not abuse discretion in refusing Howard's testimony. Howard was not a party to the claimed conversation; he would say he overheard the parties. Howard was walking back and forth during the conversation, and the court said it was not clear how far he was from Bowel and Cooley when they were talking, or who the persons in the area were, or whether Howard heard all or part of the conversation. Too, and importantly, Cooley, who could not be found to testify, was not available for cross-examination by the prosecution.

We would observe that, in any event, the trial court permitted the testimony of John Bowel and Hogan, which was apparently substantially the same as the proposed testimony of Howard. Too, the victim on two separate occasions specifically stated that Cooley was not the man who stole her purse.

For these reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*