THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DeANGELO ANDERSON, Defendant-Appellant.

First District (3rd Division)   No. 1—95—3354

Opinion filed August 20, 1997.

Rita A. Fry, Public Defender, of Chicago (Alison Edwards and Michael J. King, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

A jury found DeAngelo Anderson guilty of five attempted murders and not guilty of two murders. On August 29, 1995, a judge sentenced Anderson to five concurrent, extended terms of 45 years in prison. We reverse and remand.

On April 17, 1992, Latrice Cooper held a party at her house located at 6740 South Dorchester to raise funds for the funeral of a Gangster Disciple. There was Gangster Disciple graffiti on her home, and her brother, Eddie Cooper, was a Gangster Disciple.

Latrice's backyard is adjacent to the Illinois Central Railroad tracks, which lie along an embankment elevated six to seven feet above the yard. At around one o'clock in the morning, there were be-

tween 100 and 300 people on Latrice's property. Between 15 and 50 of them were in the backyard. Sometime after one o'clock, shots were fired at the house from the direction of the railroad tracks. Two people were fatally shot. Two others testified at trial that they were shot and injured. Two persons who were not harmed testified that they observed three others who had been shot and wounded.

Michael Sullivan, Andre Mauldin and Anderson, all members of the Four Corner Hustlers, a rival street gang of the Gangster Disciples, were charged with the murders and attempted murders. In a trial prior to Anderson's, separate but simultaneous juries convicted Sullivan and Mauldin of the crimes.

Two eyewitnesses testified at Anderson's trial: Latrice Cooper and Jonathon Foster. Foster was a member of the Gangster Disciples present at Latrice's party. Latrice, too, had very close ties to the Gangster Disciples. Neither Latrice nor Foster spoke to police when officers arrived at the crime scene.

Police picked up Foster the day after the shooting. He accompanied officers to the third district station, where he saw Sullivan and identified him as one of the shooters. Foster later identified Anderson as one of the shooters.

Foster testified that he was in Latrice's kitchen when the shooting began. He said he ran to a three-inch square window that overlooked the backyard, looked out and saw rival gang member Sullivan coming toward the house from the railroad tracks, firing an automatic weapon as he walked. Foster also testified that Anderson, whom he knew as DeAngelo and as Atlo and whom he knew was a Four Corner Hustler, was standing by a garage just south of Latrice's property holding a weapon. Foster admitted previously telling detectives and an assistant State's Attorney that Anderson was in Latrice's backyard rather than the yard south of Latrice's.

Foster said he left the kitchen and walked downstairs to the basement where he saw Tasha Thomas and Shelley O'Dell, who had both been fatally shot. Foster testified that before Shelley O'Dell died, he said, "[d]on't let me die." However, the medical examiner testified that O'Dell's injury killed him instantly.

Foster acknowledged, at trial, that when an investigator from the public defender's office showed him a picture of Anderson, he wrote on the back of it "this is not the gun man I saw." He said he wrote that because he thought the man pictured was Anderson's brother, Reggie, who was a Gangster Disciple and who looked like Anderson. Foster admitted a 1991 conviction for possessing a stolen motor vehicle but denied a 1991 burglary conviction, a certified copy of which was introduced into evidence by the defendant.

On April 19, 1992, two days after the shooting, police picked up Latrice who then, for the first time, spoke to officers about the shooting. In two separate lineups, Latrice identified Anderson and Sullivan, both of whom she knew were Four Corner Hustlers.

Latrice testified that she was in her basement when the shooting started. She said she climbed the stairs and, looking out a window, saw Michael Sullivan just outside of her yard. She testified that she saw Anderson in the yard south of her home holding what appeared to be a weapon.

Ralph Metz, an investigator with the public defender's office, testified that he interviewed Latrice in April 1993 and, at that time, Latrice told Metz that Anderson had been in her back yard and not the yard south of hers. Metz testified that he again interviewed Latrice on April 23, 1995. During that meeting, Metz said Latrice told him more than once that she did not see Anderson on the night of the shooting at all. At trial, Latrice denied making both statements.

Michael Sullivan made a statement to the police wherein he confessed his participation in the shooting and named the others who took part as: Pierre, Andre Mauldin and Timothy Shelley. He said he used a 9 millimeter Uzi, Pierre used a .38 special, Tim used a Tech 9, and Andre Mauldin (also known as Dwayne) used a Mach 11 in the shooting. He gave a 21-page statement while in an interview room on April 19, 1992, at 11:17 p.m. in the presence of an assistant State's Attorney, a detective and the court reporter who transcribed it. The statement is in question-and-answer form. In it, Sullivan says he and his cohorts wore ski masks during the attack. At the time Sullivan gave his statement, Anderson had already been in police custody for nearly 24 hours. Anderson's name is not mentioned in Sullivan's statement.

Andre Mauldin gave a statement on April 20, 1992, at 12:55 a.m. That statement was signed by Mauldin, an assistant State's Attorney (not the same person to whom Sullivan confessed), a detective and a youth officer. In the statement, Mauldin acknowledges his *Miranda* rights and then inculpates himself in the shooting. His is a four-page statement in summary form, handwritten, although not by Mauldin, factually like Sullivan's. In it, Mauldin names the same four persons Sullivan named as the perpetrators of the crimes. Mauldin's statement makes no mention of Anderson.

Bullets recovered from the scene came from four different 9 millimeter weapons. Police recovered two weapons that they believed were used in the shooting: a 9 millimeter Intra Tech Luger and a .38-caliber revolver. They recovered the Intra Tech Luger, along with Timothy Shelley's identification, at 6808 Ridgeland, where officers went looking for Shelley and Pierre. Both are currently fugitives.

Before trial, the State moved *in limine* to bar Anderson from introducing Mauldin's and Sullivan's confessions. In its motion, the prosecution argued the statements, which the State introduced and relied on in the declarants' trials, were unreliable hearsay that failed to meet the requirements of the exception for statements against penal interest. The court denied the State's motion, finding that the statements were corroborated both internally and by physical evidence, and concluded, "in the interest of justice the jury should have that information so that they can weigh and make determinations concerning the factual basis for the finder of fact." Before trial, however, the court reversed itself, stating: (1) the two confessions did not conform to ballistics evidence, (2) each declarant denied the truth of his confession at his own trial, (3) Mauldin's and Sullivan's failure to name Anderson did not mean Anderson was not there, and (4) there would be eyewitness testimony that Anderson was present.

Anderson alleges six errors occurred in his trial. He claims: (1) the trial court erred in excluding Mauldin's and Sullivan's statements; (2) prosecutors' misconduct denied him a fair trial because they misrepresented evidence to the jury; (3) the trial court erred by improperly answering a jury question posed during deliberations; (4) the jury verdicts were legally inconsistent, warranting reversal; (5) the State failed to prove Anderson guilty beyond a reasonable doubt of one of the attempts; and (6) the trial judge relied on improper factors in sentencing Anderson. Because we find his first claim meritorious, we reverse on that ground alone and decline to decide the other issues raised.

■ Anderson claims codefendants' statements were admissible hearsay because they were against the declarants' penal interests when made. The general rule in Illinois is that extrajudicial declarations by a declarant not under oath that he, and not the defendant on trial, committed the crime are inadmissible as hearsay though the declarations are against penal interest. *People v. Bowel*, 111 Ill. 2d 58, 66, 488 N.E.2d 995 (1986). Statements against penal interest may be admitted, however, when justice requires. *Bowel*, 111 Ill. 2d at 66; *People v. Swaggirt*, 282 Ill. App. 3d 692, 700, 668 N.E.2d 634 (1996). As the United States Supreme Court explained, "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049 (1973).

In deciding whether to admit such statements, the pivotal question "is whether the declaration was made under circumstances that provide 'considerable assurance' of its reliability by objective indicia

of trustworthiness." *Bowel*, 111 Ill. 2d at 67, citing *Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49. Put another way, the trial court must determine whether the statements were made under "circumstances that impress[ed] the speaker with the solemnity of his statements." *Chambers*, 410 U.S. at 298, 35 L. Ed. 2d at 311, 93 S. Ct. at 1047.

In *Chambers*, the Court held a declaration admissible because it had sufficient indicia of reliability where (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. *Bowel*, 111 Ill. 2d at 66-67. Our supreme court indicated that the four factors enumerated in *Chambers* are to be regarded "simply as indicia of trustworthiness and not as requirements of admissibility." *Bowel*, 111 Ill. 2d at 67. A trial court must consider the totality of the circumstances in deciding whether an extrajudicial statement is trustworthy, and its determination will not be reversed absent an abuse of discretion. *People v. Carson*, 238 Ill. App. 3d 457, 463, 606 N.E.2d 363 (1992); *Bowel*, 111 Ill. 2d at 68.

Anderson rightly asserts that this court found a statement trustworthy when two of the factors set forth in *Chambers* and *Bowel* were admittedly absent. *People v. Kokoraleis*, 149 Ill. App. 3d 1000, 1025, 501 N.E.2d 207 (1986). In *Kokoraleis*, we held that the lower court abused its discretion in excluding the codefendants' confessions. Those statements, which were made to a State's Attorney and police officers while the declarants were in custody, were characterized by this court as reliable because they tended to intensify police efforts to prosecute the declarants. *Kokoraleis*, 149 Ill. App. 3d at 1020-21. "Given the obvious inculpatory nature of the statements made by both declarants while in custody to the law-enforcement personnel, these statements are more likely than not to be trustworthy." *Kokoraleis*, 149 Ill. App. 3d at 1021. Even though the declarants were unavailable at trial and their statements were made neither spontaneously soon after the crime occurred nor to close friends, we held that excluding those statements was an abuse of discretion. *Kokoraleis*, 149 Ill. App. 3d at 1025.

Both the approach utilized and the result achieved in *Kokoraleis* were duplicated in *Swaggirt*, 282 Ill. App. 3d at 705. There, the declarant allegedly confessed to the crime with which the defendant was charged. However, the declarant was not available for cross-examination (he asserted his fifth amendment rights) and he did not confess to close acquaintances as envisioned by the Court in

*Chambers.* The declarant did make a statement shortly after the crime occurred, which was against his penal interest and was corroborated by other evidence in the case. *Swaggirt,* 282 Ill. App. 3d at 705. Under those circumstances we stated, "[i]n light of the constitutional guarantee that criminal defendants should have a 'meaningful opportunity to present a complete defense,' [citation] we conclude that the trial court abused its discretion in excluding the [hearsay declaration against penal interest]." *Swaggirt,* 282 Ill. App. 3d at 705, quoting *California v. Trombetta,* 467 U.S. 479, 485, 81 L. Ed. 2d 413, 419, 104 S. Ct. 2528, 2532 (1984).

We find *Swaggirt* and *Kokoraleis* apposite and persuasive. Both consider trustworthy statements that failed to satisfy two of the four *Chambers* tests but had other important indicia of reliability. *Swaggirt,* 282 Ill. App. 3d at 705; *Kokoraleis,* 149 Ill. App. 3d at 1020-21. Mauldin's and Sullivan's statements had signs of reliability identical to those of the declarant's statement in *Swaggirt.* All three confessions were made shortly after the crimes with which defendant was charged occurred, were against the declarants' penal interests when made and were corroborated by other evidence. *Swaggirt,* 282 Ill. App. 3d at 705. Additionally, codefendants' statements were given to police and prosecutors, a telling mark of trustworthiness. *Kokoraleis,* 149 Ill. App. 3d at 1020-21.

The State relies heavily on this court's holding in *People v. Carson,* 238 Ill. App. 3d 457, 606 N.E.2d 363. There, this court held the trial court had not abused its discretion in excluding statements of codefendants based on the totality of the circumstances when two of the four factors enumerated in *Chambers* were wanting. *Carson,* 238 Ill. App. 3d at 463. In *Carson,* a murder case, one of the codefendants was defendant's brother. When Carson's brother and the other codefendant gave their statements, neither of which inculpated the defendant, the defendant's identity and his participation in the murder were not yet known by police, "allowing a reasonable inference that because defendant [was] the brother of codefendant[,] *** the codefendants might not implicate defendant in the murder at the time of their arrests." *Carson,* 238 Ill. App. 3d at 463. This court principally relied on the consanguinity of the defendant and the declarant in determining that the trial court had not abused its discretion in excluding codefendants' statements based on unreliability. *Carson,* 238 Ill. App. 3d at 463.

Although the totality of the circumstances in that case justified the trial court's exclusion of codefendants' statements, the circumstances in this case did not. While there was testimony that Anderson was in the same gang as the codefendants, Anderson was not related

to either codefendant. No argument can be made that Mauldin and Sullivan did not mention Anderson solely to protect a fellow gang member because they inculpated two other members of their gang. Moreover, Anderson was never shown to be a leader of the Four Corner Hustlers. In fact, evidence showed Sullivan was the highest ranking official of the gang being charged. Importantly, when Sullivan gave his statement, the police already had Anderson in custody. Sullivan knew, when he gave his statement, that Anderson was in custody because he saw Anderson at the police station. Therefore, no motivation to protect a fellow gang member can be found on the record here. The facts of *Carson* are materially distinguishable from those of the instant case. Therefore, in analyzing this case, we address each of the factors announced by the Court in *Chambers* and determine whether the totality of the circumstances warranted these statements' exclusion. *Bowel*, 111 Ill. 2d at 68.

■ The first factor used in assessing trustworthiness is whether the statements were made spontaneously to close acquaintances shortly after the crime occurred. *Chambers*, 410 U.S. at 300, 35 L. Ed. 2d at 312, 93 S. Ct. at 1048. Mauldin and Sullivan made statements shortly after the crime occurred, approximately two days later, while the events at issue were still fresh in their minds. But, they confessed to police and prosecutors rather than close friends. However, we have held that confessions to law enforcement officers are "more likely than not trustworthy," because they tend to intensify prosecutorial efforts against the declarant. *Kokoraleis*, 149 Ill. App. 3d at 1021. One purpose of the rule excluding hearsay declarations against penal interest is to guard against "the presentation of perjured testimony to the jury." *Chambers*, 410 U.S. at 299, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048. The testimony of close acquaintances of the declarant is considered somewhat suspect and "often motivated by extraneous considerations." *Chambers*, 410 U.S. at 300, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048.

In this case, declarants both made statements in the presence of police, prosecutors and recorders. There can be no doubt both statements were actually made by the declarants. Additionally, the circumstances in which these confessions were given were certainly sufficient to "impress the speaker[s] with the solemnity of [their] statements." *Chambers*, 410 U.S. at 298, 35 L. Ed. 2d at 311, 93 S. Ct. at 1047. Mauldin and Sullivan both must have known, having been told of their *Miranda* rights, that they were subjecting themselves to prosecution by confessing. This is a strong indication of their statements' reliability. *Kokoraleis*, 149 Ill. App. 3d at 1021.

The second factor is whether codefendants' statements were cor-

roborated by other evidence in the case. *Chambers*, 410 U.S. at 300, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048. The codefendants' statements were corroborated by ballistics evidence, physical evidence and witness testimony. Police recovered guns of the type described in the statements and believed those guns were used in these crimes. Testimony corroborated the path codefendants said they took to Latrice's backyard and the location where codefendants said the perpetrators stood during the attack. Weapons' cartridges were also found on the ground behind Latrice's yard in the several spots where Sullivan and Mauldin said the attackers stood while they fired. And, investigators found bullets fired from the types of guns described by codefendants at the scene.

The corroboration of the statements sought to be admitted here is like that in *People v. Nally*, 216 Ill. App. 3d 742, 769, 575 N.E.2d 1341 (1991). In *Nally*, we found the second *Chambers* factor present where the statement, in which declarant allegedly confessed to the crime with which defendant was charged, included a description of the gun that was later found by police investigating the crime, a description of the area where the shooter stood consistent with police accounts and an explanation for debris apparently left behind by the shooter around that spot. To the State's argument that declarant's statement was not reliable or authentic because the information contained therein was previously and widely reported by media, this court responded that "such concerns go more to the weight to be accorded such testimony rather than admissibility." *Nally*, 216 Ill. App. 3d at 769.

Furthermore, codefendants' statements were corroborated by each other. "[Where] codefendants' confessions are identical in all material respects, the likelihood that they are accurate is significantly increased." *Lee v. Illinois*, 476 U.S. 530, 545, 90 L. Ed. 2d 514, 529, 106 S. Ct. 2056, 2064 (1986). Mauldin and Sullivan gave statements in two different rooms, to two different assistant State's Attorneys, at two different times, that were identical in their material terms.

The State highlights the statements' differences. Sullivan's was transcribed by a court reporter, while Mauldin's was written in summary form by someone other than Mauldin. Sullivan, in response to a question, said he and his cohorts wore ski masks. Mauldin's statement is silent on the issue of whether ski masks were worn. Mauldin said Sullivan told him to count to three and that on three the attack would begin. Sullivan said only that Mauldin counted to three, but he did not say the count was pursuant to his instruction. We find these disparities negligible. Each codefendant inculpated himself,

named the same four perpetrators, described the same events which led to the crime and detailed the crime virtually identically. Codefendants' statements are identical in all material respects and thus more likely accurate than not. *Lee*, 476 U.S. at 545, 90 L. Ed. 2d at 529, 106 S. Ct. at 2064.

The third *Chambers* factor is whether the statements were self-incriminating and against the declarants' interests. *Bowel*, 111 Ill. 2d at 66-67. The State concedes that codefendants' statements were self-incriminating and against declarants' interests.

The fourth factor is whether there was adequate opportunity for cross-examination of the declarants. *Bowel*, 111 Ill. 2d at 66-67. Both declarants testified and were cross-examined at their own trial. Both were called as witnesses by Anderson and both invoked their fifth amendment rights. However, the declarants' unavailability is only one relevant factor in determining trustworthiness. *Bowel*, 111 Ill. 2d at 68. "The unavailability of [declarants] to testify *** does not preclude admissibility of their statements." *Kokoraleis*, 149 Ill. App. 3d at 1024; *Carson*, 238 Ill. App. 3d at 463. Having determined that codefendants' statements clearly satisfy at least two and perhaps three of the *Chambers* tests for reliability, we consider other factors that lead to our conclusion that codefendants' statements were erroneously excluded.

The trial court, reversing its earlier ruling, granted the State's motion *in limine* for several stated reasons. First, it held that because both declarants denied the truth of their statements at trial, the statements were unreliable. The record reveals that the premise for this conclusion is unsound. Sullivan did not wholly disaffirm the truth of his statement. Testifying at his trial, Sullivan admitted his participation in the shootings but claimed self-defense. He admitted giving the statement and said he told police the truth. On cross-examination, Sullivan said there were some mistakes in his statement. While Mauldin wholly disaffirmed the truth of his statement at his trial, he never denied making it.

Even if both declarants denied the truth of their statements at trial, which they did not, their recantations would be nondispositive of the statements' reliability in this case. These statements were corroborated by physical evidence, ballistics evidence, witness testimony and each other. They were given at different times, in different places, with different witnesses and recorders present, to different police officers and prosecutors, with no hint of collusion yet they are identical in their material terms. Considering the totality of the circumstances, recantation alone should not defeat the confessions' admissibility here. *Bowel*, 111 Ill. 2d at 68.

■ The next reason the trial court articulated for granting the State's motion was that it anticipated eyewitness testimony placing Anderson at the scene. Again, this has no relevance to whether codefendant's statements were trustworthy when made. *Chambers*, 410 U.S. at 298, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048.

■ The court also granted the motion because, it explained, although codefendants' statements did not mention Anderson, that did not mean Anderson did not commit the crimes. We do not consider this a reason to exclude the statement as some evidence of defendant's innocence for the jury to weigh. It certainly is irrelevant to the determination of whether codefendants' statements were reliable or "made under *** circumstances that impress[ed] the speaker with the solemnity of his statements." *Chambers*, 410 U.S. at 298, 35 L. Ed. 2d at 311, 93 S. Ct. at 1047. And, the omission itself might have been persuasive evidence of Anderson's innocence. Each codefendant said four perpetrators committed these crimes and each codefendant named the same four. Neither named Anderson. "The absence of such a nexus could cast serious doubt in the minds of the jurors that defendant was guilty of the charged offense[s]." *Carson*, 238 Ill. App. 3d at 462. Anderson's absence from codefendants' accounts is particularly meaningful where, as here, the entire evidence against Anderson consisted of statements given by two eyewitnesses both of whose veracity, memory and impartiality were, at least, called into question. This was not a case where the evidence overwhelmingly established the defendant's guilt. Indeed, the jury chose not to convict Anderson of murder, finding him guilty only of attempted murder. Viewed in light of the evidence here, these verdicts are logically inconsistent and suggest jury uncertainty regarding Anderson's involvement in these crimes.

■ The final ground asserted by the trial court for excluding the confessions was that they did not conform to ballistics evidence. That goes to the second of the four *Chambers* factors. *Chambers*, 410 U.S. at 300, 35 L. Ed. 2d at 312, 93 S. Ct. at 1048. However, we disagree with the trial court's finding that ballistics evidence contradicted the statements. Both statements said four guns of specific types were used and two of those guns were recovered by police. One was discovered with the identification card of a Four Corner Hustler identified in both statements as one of the shooters. Bullets found at the scene were of the type fired from the guns described by codefendants in their statements, and cartridges from guns of the type described by codefendants were found in the spots codefendants said the shooters stood.

In conclusion, we find the State's argument that codefendants'

statements are unreliable ironic because the circumstances under which those statements were made, memorialized and verified were almost exclusively in the State's control. Furthermore, codefendants' statements were introduced and used against Mauldin and Sullivan at their own trials by the State which, at that time, urged their reliability.

"Few rights are more fundamental than that of an accused to present [evidence] in his own defense." *Chambers*, 410 U.S. at 302, 35 L. Ed. 2d at 312, 93 S. Ct. at 1049. The evidence rejected by the trial court bore persuasive assurances of trustworthiness and thus was within the exception to the hearsay rule for declarations against penal interest. We are not satisfied that admission of these statements would not have changed this trial's outcome. Because the trial court's exclusion of codefendants' statements denied Anderson a trial in accord with traditional and fundamental standards of due process, we find the court abused its discretion in so ruling. *Chambers*, 410 U.S. at 302, 35 L. Ed. 2d at 312, 93 S. Ct. at 1049.

For all of these reasons, we reverse the judgment of the trial court and remand this cause for a new trial. Anderson can, of course, only be retried on the five counts of attempted murder for which he was found guilty and not on the two counts of murder for which he was found not guilty. *People v. P.H.*, 145 Ill. 2d 209, 224, 582 N.E.2d 700 (1991).

Reversed and remanded.

COUSINS, P.J., and GORDON, J., concur.